No. 23-50419

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

CHARTER COMMUNICATIONS, INCORPORATED;
TIME WARNER CABLE TEXAS, L.L.C,
*Plaintiffs-Appellees*

v.

PREWITT MANAGEMENT, INCORPORATED, AS GENERAL PARTNER OF
WAP, LIMITED, A TEXAS LIMITED PARTNERSHIP; WAP, LIMITED, A
TEXAS LIMITED PARTNERSHIP,
*Defendants-Appellants*

_____

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
Civil Action No. 1:16-CV-01268-LY

_____

REPLY BRIEF OF APPELLANTS
_____

| | |
|---|---|
| Jane M. N. Webre<br>Texas Bar No. 21050060<br>jwebre@scottdoug.com<br>Sam Johnson<br>Texas Bar No. 10790600<br>sjohnson@scttdoug.com<br>SCOTT DOUGLASS<br>    & MCCONNICO LLP<br>303 Colorado St., Suite 2400<br>Austin, TX 78701<br>512-495-6300—Tel.<br>512-495-6399—Fax | Roy L. Barrett<br>Texas Bar No. 01814000<br>NAMAN, HOWELL,<br>    SMITH & LEE, PLLC<br>400 Austin Avenue, Suite 800<br>P.O. Box 1470<br>Waco, Texas 76703-1470<br>254-755-4129—Tel.<br>254-754-6331—Fax |

COUNSEL FOR APPELLANTS

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................... ii

INDEX OF AUTHORITIES............................................................................. iii

ARGUMENT .....................................................................................................2

    A.    The actual text of the Saving Clause conditions the issuance and continuance of a SICFA on the continuing payment of royalties. .........2

        1.    Charter continues to ignore the text of the Saving Clause..........2

        2.    Charter's reading of the Saving Clause would vitiate its meaning and effect and render it a nullity. ................................6

        3.    This Court should remand the constitutional issues to the district court to rule on in the first instance. .............................10

    B.    The issues with respect to the interpretation of the 1964 Agreement have been fully briefed, and no further argument is necessary. ......................................................................................11

CONCLUSION AND PRAYER ......................................................................13

CERTIFICATE OF SERVICE .......................................................................15

CERTIFICATE OF COMPLIANCE ..............................................................16

## INDEX OF AUTHORITIES

**Cases**

*Moore v. Sabine National Bank of Port Arthur*, 527 S.W.2d 209 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.) ............................................................ 5

*Tex. Workforce Comm'n v. Wichita Cty.*, 548 S.W.3d 489, 492 (Tex. 2018) ........... 5

*Texas Dept. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637 (Tex. 2004) ........ 5

**Statutes**

Fed. R. App. P. 28(a)(8), (b) ................................................................................ 10

Tex. Gov't Code § 311.021(2) ................................................................................ 5

Tex. Util. Code §66.004(f) ............................................................................. passim

No. 23-50419

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

CHARTER COMMUNICATIONS, INCORPORATED;
TIME WARNER CABLE TEXAS, L.L.C,
*Plaintiffs-Appellees*

v.

PREWITT MANAGEMENT, INCORPORATED, AS GENERAL PARTNER OF
WAP, LIMITED, A TEXAS LIMITED PARTNERSHIP; WAP, LIMITED, A
TEXAS LIMITED PARTNERSHIP,
*Defendants-Appellants*

_____

REPLY BRIEF OF APPELLANTS

_____

TO THE HONORABLE FIFTH CIRCUIT:

Defendants-Appellants Prewitt Management, Incorporated, as General Partner of WAP, Limited, a Texas Limited Partnership; and WAP, Limited, a Texas Limited Partnership (together, "Prewitt") file this Reply Brief of Appellants.

Words matter. This is especially true about the words used by legislative bodies, whether those words are found in the U.S. Constitution or statutory enactments by state legislatures, and Courts should interpret those words in a manner that gives them the effect that the state legislature intended. In this case, Plaintiffs-Appellees Charter Communications, Incorporated and Time Warner Cable Texas, L.L.C. (together, "Charter") continue to ignore the actual text of section 66.004(f)

of the *Texas Cable Act* (the "Saving Clause") and ask this Court to interpret that provision in a manner that makes the Saving Clause a nullity. This Court should reject that effort and enforce the plain text of the Saving Clause to save Charter's contractual obligations to Prewitt, which is what it was meant to do.

## ARGUMENT

A. <u>The actual text of the Saving Clause conditions the issuance and continuance of a SICFA on the continuing payment of royalties.</u>

It is instructive that Charter chose to reverse the order of arguments from Prewitt's Brief of Appellant. Prewitt put the interpretation of the Saving Clause first and contract interpretation second. Charter put the statutory issue last and then spent only five pages out of its eighteen-page argument in a cursory argument on the statutory interpretation issue. Charter is attempting to minimize the statutory interpretation issue because the language of the Saving Clause is so clear and unambiguous that the only way to avoid its effect is by trying to duck the issue entirely. But the language of the Saving Clause is dispositive. If this Court determines that the district court's interpretation of that language was incorrect, the appropriate remedy is to reverse and remand the case to determine the constitutional issues that the district court did not address or rule on in any substantive fashion.

1. <u>Charter continues to ignore the text of the Saving Clause.</u>

In the opening brief, Prewitt pointed the Court to the second and third sentences of the Saving Clause, which read:

> All liens, security interests, royalties, and other contracts, rights, and interests in effect on September 1, 2005, or the date a franchise is terminated under Subsection (b-1) or (b-2) shall continue in full force and effect, without the necessity for renewal, extension, or continuance, and *shall be paid and performed by the holder of a state-issued certificate of franchise authority*, and shall apply *as though the revenue generated by the holder of a state-issued certificate of franchise authority continued to be generated pursuant to the permit or franchise issued by the prior local franchising authority or municipality within the geographic area to which the prior permit or franchise applies. It shall be a condition to the issuance and continuance of a state-issued certificate of franchise authority that the private contractual rights and obligations herein described continue to be honored, paid, or performed to the same extent as though the cable service provider continued to operate under its prior franchise or permit, for the duration of such state-issued certificate of franchise authority and any renewals or extensions thereof, and that the applicant so agrees.*

Tex. Util. Code §66.004(f) (emphasis added).

This language makes it clear that as a condition to the issuance and continuance of any state-issued certificate of franchise ("SICFA"), the holder of such SICFA must continue to pay any existing contractual royalty obligations "as though the revenue generated by the holder of a [SICFA] continued to be generated pursuant to the permit or franchise issued by the prior local franchising authority or municipality" and "as though the cable service provider continued to operate under its prior franchise or permit." Through this language, the Saving Clause provides that Charter, as a condition to the issuance and continuance of its SICFAs covering Waco, Temple, and McGregor, must continue to pay royalties to Prewitt for any monies generated by their cable operations in those cities as though they were still

3

operating under the permits issued by those cities. This obligation is not forever, as Charter contends, but only for so long as Charter operates cable systems in those cities under SICFAs covering the cities.

Charter wholly ignores this statutory text in its brief and offers no cogent or reasonable alternative explanation for what it could mean. Only one paragraph in Charter's brief even attempts to grapple with the actual text of the Saving Clause:

> Here, the Savings Clause is just intended to ensure the Texas Cable Act does not "abrogate, nullify, or adversely effect in any way" pre-existing "contractual rights, duties, and obligations" between a cable provider and private party. Tex. Util. Code §66.004(f). It thus applies to all "liens, security interests, royalties, and other contracts, rights, and interests" in effect on September 1, 2005, which necessarily includes the Agreements. *Id.* And the Savings Clause further provides those Agreements "shall continue in full force and effect" and be "performed" by "the holder of a [SICFA]" as if the cable provider "continued to operate under its prior franchise or permit." *Id.*

Brief of Appellee pp. 40-41. But even that spare discussion selectively quotes words and phrases from the Saving Clause to try and assemble a patchwork of *different* statutory language that might support its interpretation of the Saving Clause.

For example, Charter leaves out entirely the portions of the second and third sentences of the Saving Clause that require its royalty obligations continue to be "paid" as though they are operating under the prior city-issued permits; instead, Charter emphasizes the "full force and effect" and "performed" language, which does not speak to the dispute in this case.

4

But that is not how statutory interpretation works. Texas law requires and Prewitt and Charter agree that when a court construes a statute, it is presumed that the entire statute is intended to be effective and that the Legislature included every word in the statute for a specific reason. Tex. Gov't Code § 311.021(2); *Texas Dept. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004); *Tex. Workforce Comm'n v. Wichita Cty.*, 548 S.W.3d 489, 492 (Tex. 2018). Thus, it is a well-established principle of statutory construction that each sentence, clause, phrase, and word is to be given effect if possible. *Moore v. Sabine National Bank of Port Arthur*, 527 S.W.2d 209, 212 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.). But Charter wants this Court to ignore the plain and unambiguous text of the Saving Clause and substitute a reading that erases significant portions of the statute. This Court should reject that effort.

This is what the Saving Clause says about the obligation to continue making royalty payments after the issuance of a SICFA: "royalties…shall be paid…by the holder of a [SICFA]…as though the revenue generated by the holder of a [SICFA] continued to be generated pursuant to the permit or franchise issued by the prior local franchising authority or municipality within the geographic area to which the prior permit or franchise applies." If this Court accepts Charter's interpretation of that plain and unambiguous text, and Charter is not required to continue making royalty payments under the 1964 Agreement as long as it continues operating cable

franchises in the cities of Waco, Temple, and/or McGregor under SICFAs, then what does that statutory provision mean? Charter does not offer a plausible alternative interpretation of this language because there is none. This Court should give effect to this plain and unambiguous text in the Saving Clause.

    2.    <u>Charter's reading of the Saving Clause would vitiate its meaning and effect and render it a nullity.</u>

Charter argues that its interpretation of the Saving Clause would not render the provision meaningless because, by "interpreting the Savings Clause simply to preserve—but not modify—the parties' contractual rights and obligations, the District Court ensured the Act did not deprive the parties of the benefit of their pre-existing bargain." Brief of Appellee pp.42-43. Thus, according to Charter, the purpose of the Saving Clause is satisfied by "[preserving] – but not [modifying] – the parties' contractual rights and obligations."

But Charter's argument makes no sense. Under Charter's construct, without the Saving Clause the *Texas Cable Act* would have interfered with or modified the contractual obligation in the 1964 Agreement. The plain text of the Savings Clause makes clear that it was put in the *Texas Cable Act* to prevent such interference and to save obligations that cable providers had to other parties under city issued franchises and assure they would continue to be honored under SICFAs. Consider the issue this way: if Charter's interpretation of the 1964 Agreement, which is articulated throughout their brief, is correct, then it granted Charter the right to

6

operate cable franchises in the cities of Waco, Temple, and McGregor during the life of those city-issued permits, any renewals or extensions, any amendments thereto, any holding over period, or during the term of any new permit issued by those cities. And, if Charter's interpretation of the 1964 Agreement is correct, when those city-issued permits expired or were terminated, those permits would go back to Prewitt and Charter's royalty payment obligations would cease.

Under Charter's interpretation of the 1964 Agreement, the Saving Clause in the *Texas Cable Act* did nothing to interfere with or modify those portions of the 1964 Agreement, and after the issuance of SICFAs covering the cities of Waco, Temple, and McGregor, Charter would still be able to operate cable systems in those cities and those now-useless city-issued permits could revert back to Prewitt, and nothing about the *Texas Cable Act* would interfere with those rights. That argument remarkably misses the point. The Texas Legislature realized that after passage of the Act, the entire franchising system was changed in a way that made city-issued permits no longer required and thus without value. One remedy Prewitt had before the Act was passed was to secure return of the city-issued franchises if Charter breached its royalty payment obligation. Passage of the Act, by making the city-issued franchises worthless, took away that remedy. As a result, the Act without the Savings Clause would have done exactly what Charter now argues it does even with the Savings Clause. To prevent that injustice, the Texas Legislature put a textually

plain and unambiguous provision in the Act to mandate that all royalty payment obligations like those Charter owed to Prewitt in effect when the Act was passed "shall continue in full force and effect." Under Charter's interpretation, the right or obligation in the 1964 Agreement that was impaired or modified by the *Texas Cable Act* without a Saving Clause was its royalty payment obligation under the 1964 Agreement. That is the right or obligation that was preserved by the Saving Clause.

Look at this another way: if the Legislature had not included the Saving Clause in the Act, Charter's interpretation of the language of the 1964 Agreement is that, following the issuance of SICFAs covering Waco, Temple, and McGregor, Charter was entitled to: (1) continue operating cable franchises in those cities; (2) continue generating profits from the operation of those cable franchises; and (3) stop making royalty payments to Prewitt based on the revenue generated in those cities because SICFAs are not city-issued permits and are not "any new permits" under the terms of the 1964 Agreement, and Prewitt's only remedy was to have returned to it the city-issued franchises which the Act made worthless. Charter's interpretation of the Act with the Saving Clause is that, following the issuance of SICFAs covering Waco, Temple and McGregor, Charter would still be entitled to: (1) continue operating cable franchises in those cities; (2) continue generating profits from the operation of those cable franchises; and (3) stop making royalty payments to Prewitt based on the revenue generated in those cities. Thus Charter argues that the Saving

8

Clause was not necessary to preserve the above rights and obligations because they would have been preserved without it. Thus, under Charter's interpretation, the Saving Clause would have accomplished *nothing* and preserved *nothing* about the prior relationship between the parties under the 1964 Agreement. Charter's arguments make the Savings Clause a nullity, with no meaning or purpose. But the plain and unambiguous text of the Savings Clause, when interpreted as Prewitt contends it should be, has an important purpose and significant results.

In reality, what Charter is asking for is to interpret the Saving Clause in a manner that expands the rights it had prior to the enactment of the *Texas Cable Act*. Prior to the *Texas Cable Act*, Charter had the right under the 1964 Agreement to operate cable franchises in Waco, Temple, and McGregor as long as they continued making royalty payments to Prewitt on the revenues generated by those operations. Now, Charter seeks to use the *Texas Cable Act* to allow them to continue operating cable franchises in Waco, Temple, and McGregor without having to make those royalty payments. That is not a "preservation" of their rights under the 1964 Agreement; it is an expansion of those rights, and Prewitt's right to receive royalty is washed out.

Under Charter's reading, the *Texas Cable Act* modified the relationship between Prewitt and Charter under the 1964 Agreement because the Texas Legislature, by creating a state-based permitting regime, allowed Charter to continue

9

operating cable franchises and generating revenue but washed out Prewitt's contractual royalty right. The Texas Legislature acted to prevent such unintended and unjust results, so it included a textually plain and unambiguous Savings Clause. The Saving Clause had a purpose, and that purpose is to prevent the regulatory change from city-issued permits to state-issued SICFAs from washing out contractual obligations. This Court should interpret section 66.004(f) in a manner that would give the Saving Clause the meaning and impact it was intended to have.

    3.    <u>This Court should remand the constitutional issues to the district court to rule on in the first instance.</u>

At the very end of its brief, Charter spends two paragraphs trying to support the district court's statement that interpreting the Saving Clause to preserve Prewitt's royalty payment obligation would create a "host" of constitutional issues. Charter states, in a conclusory fashion, that Prewitt's interpretation of the Saving Clause "creates federal and state law preemption issues," and, "would also violate Charter's rights under the Speech and Equal Protection clauses of the U.S. and Texas Constitution…as well as the federal Contracts Clause." Brief of Appellee p. 43. Those spare, conclusory arguments do not cite or discuss any case law or provide the Court with adequate briefing regarding Charter's contention that interpreting the Saving Clause as Prewitt urges would be unconstitutional. It therefore fails to present to this Court a meaningful opportunity to reach any constitutional issues as an alternative basis to affirm the judgment. *See* Fed. R. App. P. 28(a)(8), (b) (argument

in Appellee's Brief must include "citations to the authorities and parts of the record"). Moreover, the district court stated during the bench trial that, "I have no doubt at this moment as I sit here the statute is constitutional, the Texas Cable Act is constitutional." ROA.4392. Thus, there is no way for this Court to evaluate the vague reference to "a host of issues," and constitutional issues should not impact the interpretation of the Saving Clause.

The constitutional issues were fully briefed and hotly contested in the district court, but the district court did not rule on them. The issue before this Court is thus the proper interpretation of the actual text in the Saving Clause, and the issue of whether that interpretation would run afoul of either the U.S. or Texas Constitutions is not truly presented and cannot be resolved here. This Court should reverse the decision of the district court, give effect to the Saving Clause in section 66.004(f), and remand this case to address the constitutional issues in the first instance.

B.  <u>The issues with respect to the interpretation of the 1964 Agreement have been fully briefed, and no further argument is necessary.</u>

After a careful and thorough review of Appellees' Brief, Prewitt does not believe that any of the factual or legal arguments Charter raises in that brief were new or not anticipated in Appellants' Brief and that all of those arguments have been fully addressed in Prewitt's opening brief. Therefore, while Prewitt is confident that its interpretation of the "any new permit" language in the 1964 Agreement is correct,

in order to avoid burdening this Court with duplicative briefing, Prewitt will stand on the prior briefing in regards to the interpretation of the 1964 Agreement.

One additional note on this issue, however. On page 19 of their brief Charter contends that during trial, "Prewitt also dropped its counterclaims based on the permits for Woodway, Bellmead, and Beverly Hills," and, "conceded at trial that the…payment obligations only applied to 'permits granted by' Woodway, Bellmead, and Beverly Hills." To be clear, none of these permits are before this Court and Prewitt is not making a claim for continued royalty payments based on revenues generated in the cities of Woodway, Bellmead, and/or Beverly Hills. The decision to drop those claims has no bearing on the claims being made for royalty payments for revenues Charter has generated in the cities of Waco, Temple, and/or McGregor because the agreements relating to the different cities have different terms.

As Prewitt pointed out during trial, the agreements covering the cities of Woodway, Bellmead, and Beverly Hills did not contain the same "any new permit" language that is found in the 1964 Agreement. Instead, they state that the royalty payment obligation only continues with the issuance of, "any new permit…granted by either Woodway, Bellmead or Beverly Hills," which makes it distinct from the "any new permit" language in the 1964 Agreement which has no such limitation. If anything, the fact that the parties used different language in the agreement covering Woodway, Bellmead, and Beverly Hills than it used in the 1964 Agreement relating

to Waco, Temple and McGregor when it stated that the royalty payment obligation would extend with the issuance of "any new permit" demonstrates that it is improper to interpret the 1964 Agreement as though it contained the same limitation that applied to Woodway, Bellmead, and Beverly Hills.

## CONCLUSION AND PRAYER

Earlier we said that words matter. Actions matter too. This Court should recall that Charter continued to make royalty payments on the revenue generated in Waco, Temple, and McGregor for years after the SICFAs covering those cities were issued and then, years later, decided that the 1964 Agreement and Section 66.004(f) meant something completely different. The Court should not permit Charter to avoid its obligation through an unreasonable reading of the contract and by ignoring the plain and unambiguous text of the Savings Clause placed in the Texas Cable Act by the Texas Legislature.

There is only one reasonable interpretation of the actual words in the Saving Clause. Only one interpretation will give effect to that statutory text, and only one interpretation will avoid granting rights to Charter that did not exist prior to the *Texas Cable Act*. Section 66.004(f) plainly and unambiguously states that Charter's royalty payment obligation continues after the issuance of SICFAs as though Charter were still operating under the prior city-issued permits, and Charter has never offered an alternative interpretation of that language that makes any sense.

Prewitt respectfully prays that this Court give effect to the words used by the Texas Legislature, reverse the judgment of the district court, render judgment interpreting the language of the 1964 Agreement regarding "any new permit" to continue Charter's payment obligation to Prewitt or, in the alternative, give effect to the words used by the Texas Legislature in the Savings Clause, and remand this case to the district court to address, in the first instance, whether such an interpretation runs afoul of any constitutional provision.

Respectfully submitted,

SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
(512) 495-6300
(512) 495-6399 (Fax)

By: */s/ Jane M.N. Webre*
    Jane M. N. Webre
    State Bar No. 21050060
    jwebre@scottdoug.com
    Sam Johnson
    Texas State Bar No. 10790600
    sjohnson@scottdoug.com

Roy L. Barrett
State Bar No. 01814000
NAMAN HOWELL SMITH & LEE, PLLC
400 Austin Avenue, Suite 800
P.O. Box 1470
Waco, Texas 76703-1470
(254) 755-4129
(254) 754-6331 (Fax)

ATTORNEYS FOR APPELLANTS

## CERTIFICATE OF SERVICE

    I certify that on November 9, 2023, I electronically filed the foregoing brief via the CM/ECF system, which will provide notice to all counsel of record:

                  */s/Jane Webre*
                  Jane Webre

15

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitations, Typeface Requirements, and Type-Style Requirements

    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 3,307 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii). I understand that a material misrepresentation in this certificate of compliance may result in striking the brief and in sanctions against the person signing the brief.

                                            */s/Jane Webre*
                                            Jane Webre

November 9, 2023.